## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**

**Grand Jury Sworn in on November 3, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | **Grand Jury Original** |
| | : | |
| **MOHAMMED KAMEL IBRAHIM,** | : | **Violations:** |
| a/k/a "Hakim" | : | |
| a/k/a "Hakeem" | : | **18 U.S.C. § 371** |
| a/k/a "Silk the Shocker" | : | **(Conspiracy)** |
| | : | |
| **and** | : | **8 U.S.C. § 1324(a)(2)(B)(ii)** |
| | : | **(Bringing Aliens to the United States for** |
| **SAMPSON LOVELACE BOATENG,** | : | **Profit)** |
| a/k/a "Gabriel Gabadah" | : | |
| a/k/a "Pastor," | : | **8 U.S.C. § 1324(a)(1)(A)(iv) and (a)(1)(B)(i)** |
| | : | **(Encouraging and Inducing Aliens to Come to** |
| | : | **the United States for Profit)** |
| **Defendants.** | : | |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting and Causing an Act to** |
| | : | **Be Done)** |

## I N D I C T M E N T

The Grand Jury charges that:

## COUNT 1

At all times relevant to this Indictment:

### Introduction

1.    The defendant, **MOHAMMED KAMEL IBRAHIM**, also known as "**Hakim**," "**Hakeem**," and "**Silk the Shocker**," was a citizen of Ghana and naturalized citizen of Mexico who resided in Mexico.

2.      The defendant, **SAMPSON LOVELACE BOATENG**, also known as "**Gabriel Gabadah**" and "**Pastor**," was a citizen of Ghana who resided in Belize.

3.      The individuals referred to herein as Alien-1, Alien-2, Alien-4, Alien-6, and Alien-8, whose identities are known to the Grand Jury, were nationals of Ethiopia and aliens who had not received prior official authorization to come to, enter, and reside in the United States.

4.      The individuals referred to herein as Alien-3, Alien-5, Alien-9, Alien-10, Alien-11, Alien-12, Alien-13, and Alien-14, whose identities are known to the Grand Jury, were nationals of Eritrea and aliens who had not received prior official authorization to come to, enter, and reside in the United States.

5.      The individual referred to herein as Alien-7, whose identity is known to the Grand Jury, was a national of Nepal and an alien who had not received prior official authorization to come to, enter, and reside in the United States.

6.      Ethiopia is a country in northeast Africa bordered by Egypt, Somalia, Sudan, Eritrea, and Kenya.

7.      Eritrea is a country in northeast Africa bordered by Sudan, Ethiopia, and the Red Sea.

8.      Nepal is country in central Asia bordered by India and China

9.      Belize is a country in Central America bordered by Mexico and Guatemala.

10.     The terms "book" and "books" refer to travel documents such as passports.

## The Conspiracy

11.     From in or around June 2006 through and continuing to in or around February 2007, beginning in Mexico and Belize, and elsewhere, in the extraterritorial jurisdiction of the

-2-

United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the

United States District Court for the District of Columbia, the defendants

**MOHAMMED KAMEL IBRAHIM,**
**a/k/a "Hakim"**
**a/k/a "Hakeem"**
**a/k/a "Silk the Shocker,"**
**and**
**SAMPSON LOVELACE BOATENG,**
**a/k/a "Gabriel Gabadah"**
**a/k/a "Pastor,"**

knowingly combined, conspired, confederated, and agreed with each other and with others both

known and unknown to the Grand Jury, to commit offenses against the United States, more

particularly: (a) to bring to and attempt to bring aliens to the United States, for the purpose of

commercial advantage and private financial gain, knowing and in reckless disregard of the fact

that such aliens had not received prior official authorization to come to, enter, and reside in the

United States, regardless of any official action which may later be taken with respect to such

aliens, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (b) to knowingly encourage and induce

aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the

fact that such coming to, entry, and residence was and would be in violation of law, for the

purpose of commercial advantage and private financial gain, in violation of 8 U.S.C.

§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).

## Object of the Conspiracy

12.    The object of the conspiracy was to profit, receive consideration, and make money

by encouraging, inducing, bringing to, and smuggling aliens into the United States.

**Manner and Means of the Conspiracy**

13.    The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy.

(a)    **MOHAMMED KAMEL IBRAHIM** and various coconspirators recruited aliens in Africa, South America, and Central America who wished to be taken to the United States in exchange for the payment or promised payment of money.

(b)    **MOHAMMED KAMEL IBRAHIM** worked through **SAMPSON LOVELACE BOATENG** and others to fraudulently procure various foreign travel documents, such as Mexican visas, that enabled aliens to travel through Africa, South America, and Central America en route to the United States.

(c)    **MOHAMMED KAMEL IBRAHIM**, **SAMPSON LOVELACE BOATENG**, and various coconspirators used commercial shipping services such as FedEx and DHL to send and receive fraudulently obtained travel documents that were used as part of their alien smuggling scheme.

(d)    **MOHAMMED KAMEL IBRAHIM** used e-mail to further the smuggling operation in various ways including: to communicate with **SAMPSON LOVELACE BOATENG**, to discuss the smuggling operation, to advertise his alien-smuggling services, to negotiate smuggling fees for aliens who were to be smuggled into the United States, to coordinate the delivery of fraudulently obtained travel documents, to communicate regarding the payment of smuggling fees, to coordinate and implement smuggling arrangements and events, and to resolve issues that arose in the smuggling operation.

(e)    **MOHAMMED KAMEL IBRAHIM** conducted his alien smuggling

-4-

business through the use of a network of conspirators with whom he shared money obtained

through his alien smuggling activities; the constitution of the precise sub-team of conspirators

who would most actively participate in the smuggling of any particular alien or group of aliens

depended upon the point of origin of the aliens, the manner in which the aliens were recruited, and

the specific arrangements made to transport them to the United States.

(f)     **MOHAMMED KAMEL IBRAHIM** maintained relations with other alien

smugglers in Africa, South America, Central America, and elsewhere, who would refer to

**MOHAMMED KAMEL IBRAHIM** aliens and groups of aliens to be smuggled to the United

States.

(g)     **MOHAMMED KAMEL IBRAHIM** and other coconspirators transported

and caused to be transported aliens and groups of aliens from locations within Mexico to locations

within the United States by various means, including by storing aliens for more than twelve hours

in the luggage compartments of buses traveling to the United States border.

(h)     **MOHAMMED KAMEL IBRAHIM** and **SAMPSON LOVELACE**

**BOATENG**  took steps to conceal and maintain the secrecy of their alien smuggling activities to

protect themselves from prosecution and to permit them to continue to engage in alien smuggling.

### Overt Acts

14.     In furtherance of the conspiracy, one or more of the conspirators committed one or

more of the following acts:

1)     On or about July 29, 2006, **MOHAMMED KAMEL IBRAHIM** sent an e-

mail instructing the sponsor of Alien-2 to pay a smuggling fee.  **IBRAHIM** stated:

Please send the money to: SAMPSON LOVELACE BOATENG  Belize city Belize.

by western union. and put my phone number there. I have attached the documents
If you have any body ready, send me a DHL . . . c/o DHL Office belize city belize and
put my number. call me and give me the tracking number incase they send the
passports with 4 passport size photographs. coloured. Looking forward to your call
soon. They gave them 8days to stay in mexico but they have three months to use the
visa. The 8days start counting from the day they enter Mexico. who else? Hakeem

2)     On or about July 29, 2006, **MOHAMMED KAMEL IBRAHIM** sent an e-

mail to a smuggling associate advertising his services. **IBRAHIM** stated:

Thanks for your email. i am happy you replied. i have a visa deal from ethiopia but
it is a little bit expensive. I am currently in belize to collect for some guys. i will get
it in 3 days but it will cost 5000usd  If you need it send me the passports ASAP to
Kamel Ibrahim dhl office belize city belize 00501 6253083 call me on 00501 6253083
for further discussions. Who else Hakeem

3)     On or about July 31, 2006, in Belize City, Belize, **SAMPSON**

**LOVELACE BOATENG** received a money transfer in the amount of $1,000 as payment for

smuggling Alien-2 into the United States.

4)     On or about August 7, 2006, in Belize City, Belize, **SAMPSON**

**LOVELACE BOATENG** received a money transfer in the amount of $1,500 as payment for

smuggling Alien-1 into the United States.

5)     On or about August 24, 2006, in Mexico, **MOHAMMED KAMEL**

**IBRAHIM** arranged for coconspirators whose identities are unknown to the Grand Jury to

smuggle Alien-1 into the United States.

6)     On or about September 8, 2006, **MOHAMMED KAMEL IBRAHIM** sent

an e-mail to a smuggling associate again advertising his smuggling services. **IBRAHIM** stated:

this is hakeem. i ve got a deal for mexican vs. i can get it in 3 days and it costs
5000usd. If you are interested hit me back soon. take care

7)     In or around September 2006, in a series of telephone conversations,

**MOHAMMED KAMEL IBRAHIM** engaged in negotiations to smuggle Alien-3 to the United States, during which discussions **MOHAMMED KAMEL IBRAHIM**: (1) explained the process by which he and **SAMPSON LOVELACE BOATENG** smuggle aliens into the United States; (2) agreed to smuggle Alien-3 from Sudan into the United States for $5,000; and (3) gave instructions to send Alien-3's passport and $1,500 to **SAMPSON LOVELACE BOATENG** in Belize City, Belize, for the purpose of smuggling Alien-3 into the United States.

8)      In or around the fall of 2006, in a series of telephone conversations, **MOHAMMED KAMEL IBRAHIM** engaged in negotiations to smuggle Alien-5 to the United States, during which discussions **MOHAMMED KAMEL IBRAHIM** agreed to smuggle Alien-5 from Sudan into the United States for $5,000, and gave instructions to send Alien-5's passport to **SAMPSON LOVELACE BOATENG** in Belize City, Belize, for the purpose of smuggling Alien-5 into the United States.

9)      On or about September 19, 2006, in Belize City, Belize, **SAMPSON LOVELACE BOATENG** fraudulently obtained foreign travel documents that enabled Alien-3 to travel into Mexico en route to the United States.

10)      On or about September 22, 2006, **SAMPSON LOVELACE BOATENG** sent an e-mail to **MOHAMMED KAMEL IBRAHIM** attaching scanned copies of the travel documents that he fraudulently obtained for the smuggling of Alien-3.

11)      On or about September 24, 2006, **MOHAMMED KAMEL IBRAHIM** sent an e-mail to **SAMPSON LOVELACE BOATENG** notifying him of a correction to be made to the documents that were fraudulently obtained for the smuggling of Alien-3.  **IBRAHIM** stated:

hello pastor, how is life treating you in belize.  the guy is leaving on tuesday. Anyway, there is a little mistake in the eritrean visa.  the fm6 number is the same as the passport number and if u do it again i prefer a single entry.  the double is hard to work with.  Anyway i will call u tomorrow.  my greetings to irma and margarita.  take care and good day.  I have one book on the way and the tracking number is 849584973981.  u will receive the money tomorrow morning.

12)    On or about September 25, 2006, **SAMPSON LOVELACE BOATENG**

sent an e-mail to **MOHAMMED KAMEL IBRAHIM** discussing a correction to be made to the

documents that were fraudulently obtained for the smuggling of Alien-3.  **BOATENG** stated:

HI SHOCKER, I have told her of that and she will get that fixed tomorrow.  The double entry cannot be changed but she said next time she will do it single entry.  She said the double entry means the person is resident here and travelling through mexico and will be back through same place.  So next time it will be single entry.

13)    On or about October 4, 2006, **MOHAMMED KAMEL IBRAHIM**

fraudulently obtained a travel document authorizing Alien-2 to travel into Mexico en route to the

United States.

14)    On or about October 22, 2006, **MOHAMMED KAMEL IBRAHIM** sent

an e-mail to a smuggling associate explaining a smuggling arrangement.  **IBRAHIM** stated:

It costs 5000usd because i need to pay a friend of mine in the airport so that they can come about without too much hustling.  If they want to try and come out by themselves i'll take 3000.  What i need is the passport, and 2 passport pictures.  The address is SAMPSON LOVELACE BOATENG DHL OFFICE BELIZE CITY BELIZE.  Then u call me and give me the tracking number.  take care bro and hope to hear from u soon. chao

15)    On or about October 24, 2006, **MOHAMMED KAMEL IBRAHIM**

responded to an e-mail from a smuggling associate who had requested information regarding

smuggling arrangements.  The associate had written:

hi hakime thank u for responding soon but i do have a few questions. . . . 1-our client wants to talk to u about getting in to US without getting into any identification to the

US offices, i think u can do that  2-when u say 5000 without hustling and 3000 with hustling do there visa has a problem to get into Mexico or is there way of dealing to the tourists.  3-any question rather than these should not be answered to our client for our good business relations to our clients here.

**MOHAMMED KAMEL IBRAHIM** replied stating:

yes . . getting into U.S is no problem at all. thats what i do best.  anyway when i say 3000 with hustling means the person has to defend himself.  they might ask him why he wants to enter mexico because there are flights 3 times a day to cuba.  if he doesnt answer himself good they will let him continue to cuba without coming out of the airport.  but if he pays 5000.  i will pay my immigration friend 2 days before he comes so that he can be waiting for him immediately he gets out of the flight.  that way there is no questioning.  take care bro and hope to read from u soon.  chao.

16)    On or about November 3, 2006, in Mexico, **MOHAMMED KAMEL IBRAHIM** arranged for coconspirators whose identities are unknown to the Grand Jury to smuggle Alien-2 into the United States.

17)    On or about November 6, 2006, **MOHAMMED KAMEL IBRAHIM** instructed a person whose identity is known to the Grand Jury, to wire $1,500 to an individual in New York, as payment for smuggling Alien-3 to the United States.

18)    On or about November 6, 2006, **MOHAMMED KAMEL IBRAHIM** responded to an e-mail from an individual in Nepal who had asked whether it was possible to enter the United States from Mexico and who specifically stated "our aim is to go Usa not to stay in Mexico for long time." **IBRAHIM** replied stating:

hello brother, there is a lot of rumour here.  but there is still a way to enter dont worry about that.  last week i send 5 boys and 2 girls and all of them made it.  The wall will start building next year.  it is still ok from now to february next year.  Keep me informed.  take care.  i also have another option to london, holland and italy.  Let me know if you get the visa or not so that we can do something.  Take care brother, chao.

19)    On or about November 9, 2006, in Belize City, Belize, **SAMPSON**

**LOVELACE BOATENG** caused a package containing fraudulently obtained travel documents for Alien-5 to be sent to a person known to the Grand Jury, for the purpose of smuggling Alien-5 to the United States.

20) On or about November 20, 2006, **MOHAMMED KAMEL IBRAHIM** met Alien-3 at an airport in Mexico City, Mexico, for the purpose of smuggling Alien-3 into the United States.

21) Between on or about November 20, 2006, and on or about December 4, 2006, **MOHAMMED KAMEL IBRAHIM** housed Alien-3 in Mexico City, Mexico, for the purpose of smuggling the alien into the United States.

22) On or about November 20, 2006, in Mexico City, Mexico, **MOHAMMED KAMEL IBRAHIM** collected $500 from Alien-3 as payment for smuggling the alien into the United States.

23) On or about November 28, 2006, **MOHAMMED KAMEL IBRAHIM** sent an e-mail discussing smuggling arrangements to **SAMPSON LOVELACE BOATENG**. **IBRAHIM** stated:

> my immi friend came to my hotel today begging for just one day.  he said he will get the 6 of them out for half of what he asked before because the thing delayed a lot. i ve asked him to send it tomorrow.  he will give me the tracking number tomorrow. dont worry about that. .  i will deal with him.  he is a good guy . . he never failed me and he is responsible. . . .   the next three important once are: all eritrean books. . . . Please send the tracking number for the two for me.  there are two parcels that left here yesterday and today. 6 south books.  the tracking numbers are: 9049675106 and 9049674815

24) On or about November 28, 2006, **MOHAMMED KAMEL IBRAHIM** instructed a person known to the Grand Jury to wire approximately $1,300 to a coconspirator in

Mexico City, Mexico, as payment for smuggling Alien-3 into the United States.

25)     On or about December 2, 2006, in Belize City, Belize, **SAMPSON LOVELACE BOATENG** received a money transfer in the amount of $1,000 as payment for smuggling Alien-4 into the United States.

26)     On or about December 4, 2006, **MOHAMMED KAMEL IBRAHIM** caused Alien-3 and others to be transported to a bus in Mexico City, Mexico, where the aliens were loaded into a baggage compartment and transported by a coconspirator whose identity is unknown to the Grand Jury approximately twelve hours to a drop point near the United States-Mexico border, for the purpose of smuggling the aliens into the United States.

27)     On or about December 5, 2006, in Mexico, **MOHAMMED KAMEL IBRAHIM** arranged for coconspirators whose identities are unknown to the Grand Jury to meet Alien-3 and other aliens at a drop point near United States-Mexico border and to smuggle the aliens into the United States.

28)     On or about December 11, 2006, **SAMPSON LOVELACE BOATENG** sent an e-mail to **MOHAMMED KAMEL IBRAHIM** to coordinate the smuggling of Ecuadorians on December 14, 2006.  **BOATENG** stated:

> HI MR SHOCKER, Two of them are leaving Quito 14th Dec Thursday with COPA and arriving same day at 1208 in the afternoon. . . .  Please get in touch with the guy and let me know how thing should go at the airport on their day of arrival so that Belize airport issue will not happen to them there.  Please call me, I have been trying but not getting through to you.  Pastor

29)     On or about January 30, 2007, **MOHAMMED KAMEL IBRAHIM** sent an e-mail to **SAMPSON LOVELACE BOATENG** to resolve issues in their smuggling operation.  **IBRAHIM** stated:

Hello pastor, Sorry for the misunderstanding that happened the whole of this month.
. . .  I am doing everything possible to get to u as early as possible.  I came to
tapachula to drop some xxxx yesterday . . . .  Please pastor, u know i will never take
a dollar belonging to u because it is ur job and i know u pay for it.  Just do me this
favor.  the book is sitting downthere and we are not getting paid for it.  please send the
first ones that are issued a month ago to the address below . . . . and please scan the
rest of them for me and my bill.  i will get u all ur money from here in a week.  i
promise you that.  And if u think u cant do that for some reason, please let me know
so that the guy can send it to u from sudan but not all the books are his and he wants
me to take care of the mexico city airport for him.  Please do this for me and i will
never let you down.  i want it to go to Ghana because they dont check it too much.
and please send it in a magazine and with a different name not yours.  all the books
will go to Ghana.  Thank you for ur co-operation.  i will still come to belize before I
go.  Trust me on this please.  dont send the rest untill i pay you the last cent.  Say hi
to Irma and margarita for me, thank u.  Who else?  Ur prodigal son.

30)    On or about January 1, 2007, in Mexico, **MOHAMMED KAMEL**

**IBRAHIM** arranged for coconspirators whose identities are unknown to the Grand Jury to

smuggle Alien-4 into the United States.

31)    On or about January 31, 2007, **SAMPSON LOVELACE BOATENG**

responded to **MOHAMMED KAMEL IBRAHIM** in an e-mail to resolve issues in the

smuggling operation.  **BOATENG** stated:

Hi My Brother. . . .  This is business and it will have to be dealt as such.  Whatever
money the guy has given to you, let him understand that you will be doing the job to
the final destination and so you have used the money to pave the way because
something cropped up so he should send the money for the visas and once they get to
Mex you will be responsible for everything.  Some of these visas were taken about a
month ago and they have to be paid for.  If you have to go to Ghana, please just go and
take care of the issues there and leave this for me to handle.  As soon as the money is
sent I will mail them and the guy there will also have to see to it that the people get
to Mex and your wife and whoever you can entrust the business to wilol handle the
rest.  If any other thing is keeping you from Ghana that is different but if it has to do
with these books the please go and let us handle it.  The only thing is that if they are
not quick in paying I will sell them to someone who is ready to buy all of them. . . .
Bye and God bless you.  You are not a prodigal son, we all have our mistakes and bad
days as well.  Hi to everybody.  PASTOR NB// PLEASE TRY TO GET THE
LETTER FROM THE IMMIGRATION GUY CONCERNING THE VISAS FOR

ME, PLZ PLZ.  THERE IS SOMEONE IN CUSTODY BECAUSE OF THAT.
THANKS.

32)    On or about January 31, 2007, **MOHAMMED KAMEL IBRAHIM** sent

another e-mail to **SAMPSON LOVELACE BOATENG** to resolve issues in their smuggling

operation.  **IBRAHIM** stated:

> i will do everything possible to come to belize today.  i see that u still dont understand
> me,. my name is at stake here and i have to clear it.  i dont want to spoil my name.
> The guy know how i work and he has not given me what he claims he has.  i will try
> and get a new book today and i will come there.  Just send me my bill. if the money
> is the problem i will come and pay u all that.  I want to close everything and go back
> home clean.

33)    On or about January 31, 2007, **SAMPSON LOVELACE BOATENG**

again responded to **MOHAMMED KAMEL IBRAHIM** in an e-mail to resolve issues in the

smuggling operation.  **BOATENG** stated:

> Hi  Its not that I don't understand you.  They have to pay for the visas before I can
> send them.  I think its my fault.  They should have paid the money before the visas are
> taken for them as I do with the other people.  Whatever money issue is between you
> and the guy is in connection with the business you have with him so that has nothing
> to do with me.  If he has given you any money you have the right to collect it in
> respect to the business you have with him.  And to be very honest with you, whatever
> price you agree with him or anybody on a visa is no problem to me.  You also need
> to make your money, so don't worry about that.  The only thing is that I need them to
> pay me for the visas before they are sent.  So please [l]et them understand that no
> payment no passports.  Thanks and take care.

34)    On or about January 31, 2007, **MOHAMMED KAMEL IBRAHIM**

instructed a person known to the Grand Jury to wire $500 to an associate in Mexico City, as

payment for smuggling Alien-5 to the United States.

(**Conspiracy to Commit Offenses Against the United States**, in violation of Title 18, United
States Code, Section 371.)

## COUNTS 2-5

1.      Paragraphs 1 through 10 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.      On or about the dates listed below, beginning in Mexico and Belize, and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendants

**MOHAMMED KAMEL IBRAHIM,**
**a/k/a "Hakim"**
**a/k/a "Hakeem"**
**a/k/a "Silk the Shocker,"**
**and**
**SAMPSON LOVELACE BOATENG,**
**a/k/a "Gabriel Gabadah"**
**a/k/a "Pastor,"**

each aiding and abetting the other and others known and unknown to the Grand Jury, knowingly attempted to bring and brought aliens, as set forth below in Counts 2-5, to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later be taken with respect to such aliens.

| COUNT | ALIEN | DATE |
|:-----:|:-----:|:-----|
| 2 | Alien-1 | **August 24, 2006** |
| 3 | Alien-2 | **November 3, 2006** |
| 4 | Alien-3 | **December 5, 2006** |

|  | 5 | Alien-4 | January 1, 2007 |

(**Bringing an Alien to the United States for Profit**, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS 6-10

1.     Paragraphs 1 through 10 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.      On or about and between the dates listed below, beginning in Mexico and Belize, and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendants

**MOHAMMED KAMEL IBRAHIM,**
**a/k/a "Hakim"**
**a/k/a "Hakeem"**
**a/k/a "Silk the Shocker,"**
**and**
**SAMPSON LOVELACE BOATENG,**
**a/k/a "Gabriel Gabadah"**
**a/k/a "Pastor,"**

each aiding and abetting the other and others known and unknown to the Grand Jury, knowingly encouraged and induced aliens, as set forth below in Counts 6-10, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain.

| COUNT | ALIEN | DATE |
| --- | --- | --- |
| 6 | Alien-1 | August 2006 |

-15-

| | | |
|---|---|---|
| **7** | **Alien-2** | **April 2006–November 3, 2006** |
| **8** | **Alien-3** | **September 2006–December 5, 2006** |
| **9** | **Alien-4** | **December 2006–January 1, 2007** |
| **10** | **Alien-5** | **November 9, 2006–February 1, 2007** |

 (**Encouraging and Inducing an Alien to Come to the United States for Profit**, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and (a)(1)(B)(i); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS 11-19

1.      Paragraphs 1 through 10 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.      On or about the dates listed below, beginning in Mexico and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant

**MOHAMMED KAMEL IBRAHIM,**
**a/k/a "Hakim"**
**a/k/a "Hakeem"**
**a/k/a "Silk the Shocker,"**

aiding and abetting others known and unknown to the Grand Jury, knowingly attempted to bring and brought aliens, as set forth below in Counts 11-19, to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later be taken with respect to such aliens.

-16-

| COUNT | ALIEN | DATE |
|-------|-------|------|
| 11 | Alien-6 | October 30, 2005 |
| 12 | Alien-7 | November 8, 2005 |
| 13 | Alien-8 | June 10, 2006 |
| 14 | Alien-9 | August 29, 2006 |
| 15 | Alien-10 | September 3, 2006 |
| 16 | Alien-11 | September 14, 2006 |
| 17 | Alien-12 | September 30, 2006 |
| 18 | Alien-13 | December 27, 2006 |
| 19 | Alien-14 | January 15, 2007 |

(**Bringing an Alien to the United States for Profit**, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS 20-28

1.    Paragraphs 1 through 10 of Count One of this Indictment are re-alleged as if fully set forth herein.

2.    On or about the dates listed below, beginning in Mexico and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant

**MOHAMMED KAMEL IBRAHIM,**
**a/k/a "Hakim"**
**a/k/a "Hakeem"**
**a/k/a "Silk the Shocker,"**

-17-

aiding and abetting others known and unknown to the Grand Jury, knowingly encouraged and induced aliens, as set forth below in Counts 20-28, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain.

| COUNT | ALIEN | DATE |
|-------|-------|------|
| 20 | Alien-6 | October 30, 2005 |
| 21 | Alien-7 | November 8, 2005 |
| 22 | Alien-8 | June 10, 2006 |
| 23 | Alien-9 | August 29, 2006 |
| 24 | Alien-10 | September 3, 2006 |
| 25 | Alien-11 | September 14, 2006 |
| 26 | Alien-12 | September 30, 2006 |
| 27 | Alien-13 | December 27, 2006 |

**28**               **Alien-14**               **January 15, 2007**

(**Encouraging and Inducing an Alien to Come to the United States for Profit**, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and (a)(1)(B)(i); **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)


A TRUE BILL



FOREPERSON




Attorney of the United States in
and for the District of Colombia