UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 07-298-02 (RMU) |
| : | |
| v. : | |
| : | **FILED** |
| SAMPSON LOVELACE BOATENG, : | APR 22 2008 |
| a/k/a "Gabriel Gabadah" : | |
| a/k/a "Pastor," : | Clerk, U.S. District and |
| : | Bankruptcy Courts |
| Defendant : | |
| : | |

FACTUAL PROFFER
IN SUPPORT OF GUILTY PLEA

The United States, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Sampson Lovelace Boateng (hereinafter also referred to as "Boateng" or "the defendant"), hereby submit this factual proffer in support of the defendant's plea of guilty to Counts 1, 3, 4, and 5 of the pending Indictment.

I.      **ELEMENTS OF THE OFFENSES**

**Conspiracy**

Boateng is charged in Count 1 of the Indictment with knowingly conspiring to commit alien smuggling offenses against the United States from approximately June 2006 through February 2007, in violation of Title 18, United States Code, Section 371. To find Boateng guilty of Count 1, it must be determined that the Government could have proved each of the following elements beyond a reasonable doubt:

- First, from approximately June 2006 through and continuing to approximately February 2007, beginning in Mexico and Belize, and elsewhere, in the extraterritorial

jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, an agreement existed between two or more people to commit the crimes of: (a) bringing or attempting to bring aliens to the United States for the purpose of commercial advantage or private financial gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii); and/or (b) encouraging or inducing aliens to come to, enter, or reside in the United States for the purpose of commercial advantage or private financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).

- Second, the defendant intentionally joined that agreement.
- Third, one of the persons involved in the conspiracy did something for the purpose of carrying out the conspiracy.

### Bringing Aliens to the United States for Profit

Boateng is charged in Counts 3, 4, and 5 of the Indictment with bringing or attempting to bring aliens to the United States for profit, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2. The elements of the offense of bringing aliens to the United States for profit are as follows:

- First, the defendant brought or attempted to bring an alien, that is, a person who is not a citizen or national of the United States, to the United States.
- Second, the defendant knew, or recklessly disregarded, the fact that the alien had not received prior official authorization to come to, enter, or reside in the United States.

- Third, the offense was done for commercial advantage or private financial gain. The term financial gain means any economic benefit. The Government does not have to provide evidence of an actual payment or even an agreement to pay the defendant. If the defendant acted for the purpose of financial gain or expected to reap financial gain, this element is satisfied.

### Attempt

The elements of the crime of attempting to bring an alien to the United States for profit are as follows:

- First, the defendant intended to commit the crime of bringing an alien to the United States for profit.
- Second, the defendant engaged in conduct which constituted a substantial step toward the commission of the crime and which strongly corroborates his criminal intent. A "substantial step" means some important action leading to the commission of a crime as distinguished from some inconsequential or unimportant act. It must be something beyond mere preparation; it must be an act which, unless frustrated by some condition or event, would have resulted, in the ordinary and likely course of things, in the commission of the crime being attempted.

### Aiding and Abetting

To convict the defendant of Counts 3, 4, and 5 as an aider and abettor, it must be determined that the Government could have proved each of the following elements beyond a reasonable doubt:

- First, the crime of bringing, or attempting to bring, aliens to the United States for profit was committed.
- Second, the defendant helped to commit the crime or encouraged someone else to commit the crime.
- Third, the defendant intended to help commit or encourage the crime.

### Co-Conspirator Liability

To convict the defendant of Counts 3, 4, and 5 pursuant to a theory of co-conspirator liability, it must be determined that the Government could have proved each of the following elements beyond a reasonable doubt:

- First, the offense of bringing, or attempting to bring, aliens to the United States for profit was committed by a co-conspirator of the defendant.
- Second, the defendant was a member of the conspiracy at the time the offense was committed.
- Third, the offense was committed during the existence of the conspiracy.
- Fourth, the offense was committed in furtherance of the conspiracy.
- Fifth, the offense was a reasonably foreseeable consequence of the conspiracy.

## II.    FACTUAL BASIS

Had this case gone to trial, the Government would have proved each of the elements of the offenses in Counts 1, 3, 4, and 5 with competent evidence and beyond a reasonable doubt. In particular, the Government's evidence would establish that:

### (Count 1)

From approximately June 2006 to February 2007, beginning in Mexico, Belize, and

elsewhere, in the extraterritorial jurisdiction of the United States, an agreement existed between Sampson Lovelace Boateng, Mohammed Kamel Ibrahim, and others to smuggle unauthorized aliens to the United States for profit, by encouraging and inducing aliens to come to or enter the United States, and by bringing or attempting to bring aliens to the United States. Since as early as 2005, Ibrahim was the head of an organization based in Mexico City, Mexico, that smuggled African nationals through Mexico into the United States. In approximately June 2006, the defendant, an alien smuggler and document provider based in Belize City, Belize, began working with Ibrahim and others to smuggle unauthorized aliens to the United States. The object of the agreement was to profit, receive consideration, and make money by encouraging, inducing, bringing to, and smuggling aliens into the United States.

Boateng, Ibrahim, and their co-conspirators, used a variety of manner and means to accomplish the object of the conspiracy and committed numerous acts in furtherance of the conspiracy. Ibrahim and various co-conspirators recruited aliens in Africa, South America, and Central America who wanted to be taken to the United States in exchange for the payment or promised payment of money. Boateng procured various fraudulently obtained foreign travel documents, such as Mexican visas, that enabled aliens to travel through Africa, South America, Central America, and Mexico en route to the United States. Using the fraudulently obtained Mexican visas provided by Boateng, African aliens traveled into Mexico, where they were met by Ibrahim and his associates. After housing the aliens for several days or weeks in Mexico City, Ibrahim and his co-conspirators transported aliens, or caused them to be transported, from locations within Mexico to locations within the United States, by various means, including by storing aliens for more than twelve hours in the luggage compartments of buses traveling to the

Mexico-U.S. border, and by arranging for co-conspirators to meet the aliens at various drop-points at the Mexico-U.S. border, from which the aliens were smuggled into the United States. By employing this particular smuggling method–namely, transporting the aliens for more than twelve hours in the luggage compartments of buses–the smuggling organization recklessly created a substantial risk of death or serious bodily injury to the individuals who were smuggled to the United States.

Boateng, Ibrahim, and co-conspirators used commercial shipping services such as FedEx and DHL to send and receive fraudulently obtained travel documents that were used as part of their alien smuggling scheme. They also used e-mail to further the smuggling operation in various ways, including to communicate with each other and other co-conspirators, to discuss the smuggling operation, to advertise alien-smuggling services, to negotiate smuggling fees for aliens who were to be smuggled into the United States, to coordinate the delivery of fraudulently obtained travel documents, to communicate regarding the payment of smuggling fees, to coordinate and implement smuggling arrangements and events, and to resolve issues that arose in the smuggling operation.

Boateng understood the unlawful nature of the plan to smuggle aliens to the United States, and knew, or recklessly disregarded, the fact that the aliens had no prior authorization to come to, enter, or reside in the United States. On November 5, 2007, following his arrest at Miami International Airport, Boateng told law enforcement that he worked with Ibrahim to help smuggle people into the United States, and that he did so knowing it was illegal. He explained that his role in the operation was to get the aliens into Mexico en route to the United States by providing them with fraudulently obtained travel documents, such as Mexican visas. He further

explained that after he helped the aliens enter Mexico, Ibrahim was responsible for moving the aliens the rest of the way into the United States.

Boateng's e-mail communications also demonstrate that he understood the unlawful plan to smuggle aliens to the United States. For example, on June 12, 2006, Boateng sent an e-mail stating, "I should be in Mexico tomorrow but I will be back next day. I am helping some people to the USA." That same day, he sent another e-mail stating, "He should not carry any phone number or address in the USA. Take all those details from him and send to my e-mail. The charge for anyone who wants to go to USA through here is $10,000 from Quito to USA. Things are not the same as before because of USA strict measures and its known all over here that 95% of the people from 3rd world countries coming here wants to go to the USA." On July 14, 2006, Boateng sent an e-mail stating, "IF THE PEOPLE ARE GOING TO THE USA THEN COLLECT THEIR PASSPORTS 2 PICTURES AND $3000 EACH AND SEND THEM TO ME AND I WILL TAKE MEXICAN VISA FOR THEM HERE AND SEND TO THEM AND THEY CAN FLY DIRECT TO MEXICO." On September 4, 2006, Boateng sent another e-mail stating, "The people must each have cash of not less than $500 to declare. They should not carry any phone number from USA or Belize and Mexico. They are only vacation here. They have no relations in USA. No mention of my name."

Boateng, Ibrahim, and their co-conspirators acted for the purpose of commercial advantage or private financial gain. Boateng, Ibrahim, and co-conspirators received payments for their smuggling services by money transfers through Western Union, and Ibrahim also collected alien-smuggling fees in cash. E-mail communications between Boateng and Ibrahim also demonstrate that the defendant acted for the purpose of commercial advantage or private

financial gain. On January 31, 2007, Boateng sent an e-mail to Ibrahim to resolve issues in the smuggling operation in which he stated, "This is business and it will have to be dealt with as such. Whatever money the guy has given you, let him understand that you will be doing the job to the final destination." Boateng continued, "Some of these visas were taken about a month ago and they have to be paid for." Finally, he added, "The only thing is that if they are not quick in paying I will sell them to someone who is ready to buy all of them." On November 5, 2007, following his arrest Boateng told law enforcement that he charged approximately $500 per visa and helped Ibrahim smuggle approximately 30-50 aliens to the United States.

The criminal activity in this case involved five or more participants and was otherwise extensive. In addition to Ibrahim and Boateng, the alien-smuggling network included recruiters in Africa, smugglers in South and Central America, a corrupt embassy employee in Belize, and transporters, guides, and money collectors in Mexico.

In this criminal activity that involved five or more participants and was otherwise extensive, Boateng occupied the role of manager or supervisor. He exercised control, direction, and decision-making authority over a critical part of the business, namely, the fraudulent obtaining of travel documents that enabled aliens to enter Mexico. He controlled the resources for this phase of the business, namely, the documents, and dictated the terms by which they could be distributed. He brought other individuals into the smuggling operation, enlisting the support of at least one corrupt embassy employee. He also communicated with Ibrahim–the organizer or leader of the criminal activity–as a manager. Boateng was the point of contact for all issues related to the documents, served as middle-man between Ibrahim and the corrupt embassy employee, and routinely exchanged e-mails with Ibrahim discussing and resolving issues that

arose in the smuggling operation.

As further evidenced below, Boateng, Ibrahim, and their co-conspirators committed numerous alien-smuggling offenses in the course and furtherance of the conspiracy during the time period that Boateng was a member.

### (Count 3)

Between approximately April 2006 and November 3, 2006, beginning in Belize, Mexico, and elsewhere, in the extraterritorial jurisdiction of the United States, Boateng aided and abetted Ibrahim and co-conspirators in bringing or attempting to bring Alien-2 to the United States for profit. The individual designated in the Indictment and this factual proffer as Alien-2, was not a citizen or national of the United States, and had not received permission from the United States government to come to, enter, or reside in the United States by way of a visa or other official document from the United States government.

Beginning around April 2006, Boateng, Ibrahim, and their co-conspirators took a series of steps to smuggle Alien-2 to the United States. Ibrahim communicated with Alien-2's sister, a resident of Virginia, concerning the smuggling of Alien-2 to the United States. During these discussions, Ibrahim explained the process by which he and Boateng smuggle aliens to the United States, agreed to smuggle Alien-2 to the United States, and instructed the sister of Alien-2 to send money to Boateng in Belize as payment for smuggling Alien-2 to the United States. Pursuant to this arrangement, on July 31, 2006, Boateng received a money transfer in Belize City, Belize, in the amount of $1,000. The money was sent by Alien-2's sister as payment for Boateng's assistance in smuggling Alien-2 to the United States. Following this payment, Boateng fraudulently procured a Mexican visa for Alien-2 enabling him to enter Mexico and

meet up with Ibrahim. Boateng sent the fraudulently obtained travel document to a relative of Alien-2 in Ethiopia. Around October 2006, Alien-2 used the document fraudulently procured by Boateng to travel to Mexico City. Ibrahim met Alien-2 at the airport, transported him to a property in Mexico City, and housed him for several weeks. During this time, Ibrahim collected $300 from Alien-2 as final payment for smuggling him into the United States. On or about November 3, 2006, Ibrahim personally transported Alien-2 and others by van from Mexico City to a drop-point near the Mexico-U.S. border. Upon reaching the drop-point, Ibrahim instructed the aliens get out of the vehicle and to walk across the border into the United States. As instructed Alien-2 and other aliens got out of the van, and Hispanic males who had accompanied Ibrahim to the border proceeded to lead them on foot into the United States. Alien-2 illegally entered the United States on or about November 3, 2006.

After paying Ibrahim in Mexico City, Alien-2 was not required to pay any additional smuggling fees to the individuals who subsequently assisted in bringing him into the United States.

**(Count 4)**

Between approximately September 2006 and December 5, 2006, beginning in Belize, Mexico, and elsewhere, in the extraterritorial jurisdiction of the United States, Boateng aided and abetted Ibrahim and co-conspirators in bringing or attempting to bring Alien-3 to the United States for profit. The individual designated in the Indictment and this factual proffer as Alien-3, was not a citizen or national of the United States, and had not received permission from the United States government to come to, enter, or reside in the United States by way of a visa or other official document from the United States government.

Beginning around September 2006, Boateng, Ibrahim, and co-conspirators took a series of steps to smuggle Alien-3 to the United States. In telephone conversations with Alien-3's brother, a resident of Chicago, Ibrahim engaged in negotiations to smuggle Alien-3 to the United States. During these discussions, Ibrahim explained the process by which he and Boateng smuggle aliens into the United States, agreed to smuggle Alien-3 from Sudan into the United States for $5,000, and gave instructions to send Alien-3's passport and $1,500 to Boateng in Belize City, Belize, for the purpose of smuggling Alien-3 into the United States.

Pursuant to Ibrahim's instructions, the passport of Alien-3 was sent to Boateng in Belize City, Belize. On or about September 19, 2006, in Belize City, Belize, Boateng fraudulently obtained foreign travel documents, including a Mexican visa, that enabled Alien-3 to travel into Mexico en route to the United States. Boateng and Ibrahim used email to discuss these documents. For example, on September 22, 2006, Boateng sent an e-mail to Ibrahim attaching scanned copies of the documents, and on September 24 and 25, 2006, Ibrahim and Boateng exchanged e-mails concerning certain corrections to be made to the documents.

On or about November 20, 2006, Alien-3 used the fraudulently obtained travel document to fly into Mexico City. Ibrahim met Alien-3 at the airport, transported her to a property in Mexico City, and housed her for several weeks. During this time, Ibrahim collected $500 from Alien-3 as final payment for smuggling her to the United States. On or about December 4, 2006, Ibrahim arranged for and caused Alien-3 and others to be transported to a bus in Mexico City, Mexico. Alien-3 and the other aliens were loaded into a baggage compartment of the bus and transported by a co-conspirator approximately twelve hours to a drop-point near the Mexico-U.S. border. Alien-3 was then placed in a stash house, from which aliens were constantly coming and going. On or about

December 5, 2006, after spending approximately one day at the stash house, an Hispanic male transported Alien-3 to the Mexico-U.S. border and smuggled her into the United States by pulling her across a river on a flotation device.

After paying Ibrahim in Mexico City, Alien-3 was not required to pay any additional smuggling fees to the individuals who subsequently assisted in bringing her into the United States.

**(Count 5)**

Between approximately December 2006 and January 1, 2007, beginning in Belize, Mexico, and elsewhere, in the extraterritorial jurisdiction of the United States, Boateng aided and abetted Ibrahim and co-conspirators in attempting to bring Alien-4 to the United States for profit. The individual referred to in the Indictment and this factual proffer as Alien-4, was not a citizen or national of the United States, and had not received permission from the United States government to come to, enter, or reside in the United States by way of a visa or other official document from the United States government.

The Government's evidence would show that as part of the conspiracy Ibrahim intended to bring Alien-4 to the United States for profit. In the fall of 2006, after associates of Ibrahim had smuggled Alien-4 through Brazil, Bolivia, Panama, Nicaragua, Honduras, and Guatemala, Alien-4 contacted Ibrahim by telephone to make arrangements to be smuggled the rest of the way into the United States. During this conversation, Ibrahim agreed to smuggle Alien-4 to the United States. Ibrahim then proceeded to take a series of actions to implement the smuggling arrangement.

The Government's evidence would show that Ibrahim, aided and abetted by Boateng, engaged in conduct which constituted a substantial step toward bringing Alien-4 to the United

States for profit. After agreeing to smuggle Alien-4 to the United States, Ibrahim instructed Alien-4 to send his passport and $1,000 to Sampson Boateng in Belize. Ibrahim explained that Boateng would obtain a Mexican visa for Alien-4 enabling him to travel into Mexico. Once in Mexico, Alien-4 would stay with Ibrahim in Mexico City until Ibrahim moved him the rest of the way to the United States. Pursuant to this arrangement, Alien-4 sent his passport to Boateng, and on or about December 2, 2006, in Belize City, Belize, Boateng received a money transfer sent by a relative of Alien-4 in the amount of $1,000 as payment for smuggling Alien-4 into the United States. In exchange for the payment, Boateng fraudulently obtained a Mexican visa for Alien-4 enabling him to enter Mexico and meet up with Ibrahim, and sent the travel document to Alien-4 in Guatemala City, Guatemala. Boateng and Ibrahim also communicated by e-mail to implement the smuggling arrangements for Alien-4. For example, on December 4, 2006, Boateng sent an e-mail to Ibrahim providing the DHL number for the package containing the travel documents of Alien-4, and on December 7, 2006, Ibrahim sent an e-mail to Boateng confirming that the smuggling fee for Alien-4 had been paid.

After receiving the Mexican visa from Boateng, pursuant to Ibrahim's instructions, Alien-4 made preparations to use the document to enter Mexico. Before he could do so, however, Alien-4 received information that another group of aliens who had attempted to use Mexican visas provided by Ibrahim had been arrested at the Guatemala-Mexico border. Fearing the possibility of arrest, Alien-4 contacted Ibrahim to demand the return of his money. Ibrahim refused to return the money. Instead, Ibrahim instructed Alien-4 not to worry about the reported apprehensions and to proceed as planned. Ibrahim instructed Alien-4 to use the document to get into Mexico and to contact him in Mexico City in order to continue to the United States.

Notwithstanding Ibrahim's assurances and instructions, Alien-4 decided to use other smugglers to enter the United States. Alien-4 unlawfully entered the United States on or about January 1, 2007.

This factual proffer summarizes the offenses charged in Counts 1, 3, 4, and 5 of the Indictment and the defendant's participation in those offenses. It is not intended to be a complete accounting of all facts and events related to the offenses. The limited purpose of this factual proffer is to demonstrate that a factual basis exists to support the defendant's plea of guilty in this case.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
District of Columbia

_____
MICHAEL HARVEY
Assistant United States Attorney
National Security Section

_____
BRIAN ROGERS
Trial Attorney
U.S. Department of Justice
Criminal Division

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer and have discussed it with my attorney, Edward C. Sussman. I fully understand this factual proffer, and I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 4-18-08

SAMPSON LOVELACE BOATENG
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate.

Date: 4-18-08

EDWARD C. SUSSMAN
Attorney for the Defendant